**MENTOR GRAPHICS CORPORATION, an Oregon corporation, Plaintiff,**

v.

**QUICKTURN DESIGN SYSTEMS, INC., a Delaware corporation, and Cadence Design Systems, Inc., a Delaware Corporation, Defendants.**

**Quickturn Design Systems, Inc., a Delaware corporation, and Cadence Design Systems, Inc., a Delaware Corporation, Counterclaimants,**

v.

**Mentor Graphics Corporation, an Oregon corporation, Counterclaim Defendant.**

**No. C.A. 99–462 GMS.**

United States District Court, D. Delaware.

Dec. 15, 1999.

Robert W. Whetzel and Jeffrey L. Moyer, Richards, Layton & Finger, Wilmington, DE, David A. York, Steven M. Bauer and Charles S. Crompton, Latham & Watkins, Menlo Park, CA, for Plaintiff.

David C. McBride, Josy W. Ingersoll and John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE, James W. Geriak, James C. Brooks, Hope E. Melville and Lisa C. Ward, Lyon & Lyon LLP, Los Angeles, CA, Steven D. Hemminger and Jeffrey A. Miller, Lyon & Lyon LLP, San Jose, CA, for Defendants.

## MEMORANDUM OPINION AND ORDER

SLEET, District Judge.

## I. INTRODUCTION

On July 21, 1999, Plaintiff Mentor Graphics Corporation ("Mentor") brought this patent infringement action against Quickturn Design Systems, Inc. ("Quickturn"). Mentor alleges that Quickturn's "Mercury" integrated circuit design emulation system infringes two of Mentor's patents—U.S. Patent Nos. 5,777,489 and 5,790,832 ("the Barbier patents"). Presently before the court is Quickturn's motion to transfer this case to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, the court will grant Quickturn's motion.

## II. BACKGROUND

### A. The Original Parties

Mentor is an Oregon corporation with its principal place of business in Wilsonville, Oregon. Quickturn is a Delaware corporation with its principal place of business in San Jose, California. Mentor asserts that its key witnesses and documents will come from France and, to a lesser extent, Oregon. Quickturn asserts that its key witnesses, documents, and other evidence will all come from the "Silicon Valley" area of Northern California.

### B. Additional Parties

Two additional parties have appeared in this litigation, one of which remains a party at this time. Cadence Design Systems, Inc. ("Cadence") is presently Quickturn's parent corporation, having acquired all of Quickturn's stock in May of 1999. Like Quickturn, Cadence is a Delaware corporation with its principal place of business in San Jose, California. Cadence first appeared in this action on August 10, 1999, when Quickturn and Cadence both filed counterclaims against Mentor seeking a declaration that the Barbier patents are invalid and not infringed by either Quickturn or Cadence, Mentor initially moved to dismiss Cadence as a counterclaimant. It later withdrew that motion and amended its complaint to allege infringement of the Barbier patents by both Quickturn and Cadence.[1] Although Cadence thus remains a party to this action, no party (including Cadence) has suggested that its presence alters the venue transfer inquiry in any way. Additionally, the record before the court is devoid of any facts related to Cadence's participation in this lawsuit that would effect the transfer analysis.[2]

Meta Systems, Inc. ("Meta") was briefly a party to this litigation when it was also named in the Quickturn/Cadence declaratory judgment counterclaim. Meta is a wholly owned subsidiary of Mentor. It is a French corporation with its principal place of business in Saclay, France. The inventors of the Barbier patents were three employees of Meta—Jean Barbier, Olivier LePape, and Frederic Reblewski (collectively, "the inventors").[3] The inven-

---

1. Mentor's motion to dismiss Cadence's counterclaim was based on its belief that the only connection Cadence had to this action was its ownership of Quickturn. Mentor, therefore, contended that Cadence had no reasonable apprehension of being sued for infringement by Mentor. Thus, Mentor argued, Cadence lacked standing to seek a declaratory judgment of invalidity or noninfringement. Mentor withdrew its motion in reliance on Cadence's representations that it intends to merge Quickturn into Cadence before the end of 1999, and that Cadence itself makes and sells the accused Mercury emulators. (Docket Item ("D.I.") 30).

2. Cadence is not identified as joining in Quickturn's motion to transfer. Nor has Cadence filed any memoranda either supporting or opposing Quickturn's motion. Nevertheless, since Quickturn is wholly owned by Cadence and since Cadence and Quickturn are jointly represented in this action, the court presumes that Cadence acquiesces in Quickturn's motion to transfer.

3. More precisely, they were employees of Meta at the time the patent applications were filed, in October 1985 and April 1986. While the three inventors all still have relationships with Meta, the precise nature of the present

tors apparently assigned their rights to the patents in suit to Mentor in 1996, as part of the transaction by which Meta became a wholly owned subsidiary of Mentor. *See* Brooks 2nd Decl. ¶ 5 and Ex. 3.

Meta moved to dismiss the counterclaims brought against it on two grounds: (1) that Delaware courts lack personal jurisdiction over Meta; and (2) that Meta has no right to enforce or defend the Barbier patents and was, therefore, an improper declaratory judgment defendant. Quickturn and Cadence then voluntarily dismissed Meta from this action, without prejudice. They claim to have done so to avoid the dispute over personal jurisdiction. They believe this dispute would be mooted if the court transfers the case to the Northern District of California. *See* Reply Br. at 15. Although Meta is thus not currently a party to this action, its relevance to the transfer inquiry will become evident in the discussion below.[4]

### C. The Patents

The Barbier patents both involve integrated circuit design emulation technology. Briefly stated, this technology permits engineers to test new integrated circuit designs without needing to build prototypes. Instead, "emulators" simulate the proposed circuit design through the use of a series of interconnected reprogrammable integrated circuits. Once the testing and debugging process is complete, the emulator's circuits can be reprogrammed to move on to the next project. Emulation technology existed prior to the Barbier patents. These patents disclose improvements to emulators' debugging capabilities.

### D. Other Actions Potentially Relevant to Quickturn's Motion to Transfer

Circuit emulation technology is also the subject of two other actions presently pending in the Northern District of California. As discussed later, Quickturn claims that efficiencies would be gained by litigating the present action in the same district in which these other claims are pending.

### 1. The Aptix Action

The first such action, *Aptix Corp. ("Aptix") and Meta Systems, Inc. v. Quickturn Design Systems, Inc.*, Civ. A. No. C98–00762 ("the Aptix action"), was filed in February 1998. That suit alleges infringement by Quickturn of U.S. Patent No. 5,544,069 (the "Aptix patent"). The technology disclosed in the Aptix patent relates to the structure by which an emulator's programmable circuits are connected to each other. Aptix is the owner of the Aptix patent, Meta is an exclusive licensee within certain geographic regions, and Mentor is a non-exclusive licensee in other regions. Quickturn brought counterclaims against Aptix, Meta, and Mentor, seeking declarations of invalidity, unenforceability, and non-infringement of the Aptix patent.

The Aptix case and the present action involve different patents and different aspects of circuit emulation technology. Quickturn's Mercury products, however, are accused products in both the California and Delaware lawsuits. Quickturn's "System Realizer" product is also an accused product in the Aptix action, but is not an accused product in the case before the court.

### 2. The "Mirror Image" Action

The other case pending in the Northern District of California is a "mirror image" action filed by Quickturn and Cadence against Mentor and Meta. This declaratory judgment action was filed on July 22, 1999,

---

relationships is somewhat unclear. *See* Freed Decl. ¶¶ 15, 17.

**4.** Although Meta had joined in Mentor's brief in opposition to transfer, the briefing on Quickturn's motion does not focus on the interests of Meta as a party—e.g., the relative convenience to Meta of litigating in Delaware or Northern California. Rather, Meta was discussed in the briefs only to the extent that the interests of Quickturn and Mentor are affected.

one day after Mentor's complaint was filed in the present action. In it, Quickturn and Cadence seek the identical relief they request in their counterclaims in the present action—i.e., declarations that the Barbier patents are invalid and not infringed by Quickturn or Cadence. Quickturn has moved to consolidate the "mirror image" action and the earlier filed Aptix action. It also hopes to consolidate the present case with both of these California actions if its motion to transfer is granted.

The two California actions were assigned to different judges within the Northern District. The judge in the earlier filed Aptix action, Judge Alsup, recently ruled that they are not "related" within the meaning of the Northern District's local rules. As a result, the "mirror image" action was not transferred to Judge Alsup. *See* D.I. 21. This ruling apparently does not moot Quickturn's motion to consolidate the two California cases. That motion apparently remains in abeyance pending this court's ruling on the instant transfer motion. *Id.*

## III. DISCUSSION

■ Quickturn seeks to transfer this action pursuant to 28 U.S.C. § 1404(a). That section provides as follows:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

Although the decision to transfer a case is subject to the court's discretion, a plaintiff's choice of forum is a "paramount" consideration that is not to be "lightly disturbed." *Shutte v. Armco Steel Corp.,*

431 F.2d 22, 25 (3d Cir.1970); *see also Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879–80 (3d Cir.1995). As such, Quickturn has a heavy burden to carry. The court should not grant a transfer unless the "balance of convenience" weighs strongly in favor of transfer. *See Shutte,* 431 F.2d at 25.

In *Jumara,* the Third Circuit Court of Appeals identified a nonexclusive list of factors that have been used to guide courts in the exercise of their discretion in ruling on requests for transfer. *See Jumara,* 55 F.3d at 879–80; *see also Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 196–97 (D.Del.1998). The factors most relevant to this case are discussed below.[5]

### A. The Convenience of the Parties

■ Both Mentor and Quickturn are physically located on the west coast. Quickturn is headquartered in San Jose, California. All of its emulation engineering activities take place there. All of its corporate management involved in emulation technology is there. Mentor is headquartered in Wilsonville, Oregon. It maintains a regional headquarters in San Jose. Neither party has any facilities, property, or employees located in the state of Delaware. Nor has either party identified any potential witness or other source of evidence with any connection to Delaware.[6] Both parties are represented by Northern California counsel.

Nevertheless, Mentor contends that Delaware is "central to the relevant locales" in this case by virtue of three important witnesses that reside in France. The convenience and availability of these wit-

---

**5.** As a threshold matter, this action could have been brought in the Northern District of California. *See* 28 U.S.C. §§ 1391(b), 1400(b). The court can, therefore, proceed to weighing the factors for and against transfer.

**6.** Indeed, the only connection Delaware has to this case is that Quickturn and Cadence are incorporated here. Seizing on this, Mentor asserts that "as a matter of law, Quickturn's incorporation in Delaware precludes its argument that Delaware is an inconvenient fo-

rum." Opp'n Br. at 6. Mentor is incorrect. While Quickturn's Delaware incorporation may preclude it from arguing that venue is improper in Delaware, *see* 28 U.S.C. § 1400(b), in fact, Quickturn has not made that argument. Although the court does not mean to suggest that a defendant's state of incorporation is irrelevant to a venue transfer inquiry, it is certainly not dispositive. Indeed, it is not mentioned in § 1404, nor is it among the eleven factors identified by the Third Circuit Court of Appeals in *Jumara.*

nesses, however, is a separate factor that will be discussed below. As to the parties themselves, the court is convinced that the Northern District of California is a more convenient—and less expensive [7]—forum for both Quickturn and Mentor. Both parties, however, are large corporations that operate in the international marketplace. The financial burden of litigating this case in Delaware is not likely to cause extreme hardship to either party. Thus, while the convenience of the parties weighs in favor of transfer, this factor does not, by itself, warrant transfer.

### B. The Convenience and Availability of the Witnesses

■ The convenience of witnesses is often an important factor in a transfer inquiry. *See* 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3851, at 415 (2d ed.1986) [hereinafter WRIGHT & MILLER] (describing this factor as "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer"). The convenience of witnesses is only considered, however, "to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara,* 55 F.3d at 879 (citing WRIGHT & MILLER § 3851, at 420–22). Thus, for example, the convenience of witnesses that are employees of a party carries no weight because the parties are obligated to procure their attendance at trial. *See Affymetrix,* 28 F.Supp.2d at 203.

In this case, this factor weighs heavily in favor of transfer. Quickturn has identified a number of non-party witnesses who are likely to be important to this litigation. These witnesses may be unavailable to testify in Delaware. Mentor also relies heavily on this factor. As discussed below,

however, Mentor's showing is lacking in several respects.

#### 1. Quickturn Former Employees

First, Quickturn identifies three former employees—Steve Sample, Wei–Jin Dai and Mark Heising—who were intimately involved in the development of the accused Mercury products. These witnesses are expected to be critically important both to invalidity and infringement issues. Each of these witnesses resides in Northern California, within the subpoena power of the district court for the Northern District. *See* Reply Br. at 12–13.

Steve Sample was Quickturn's vice-president of advanced engineering and was "in charge of the development of Quickturn's Mercury emulation system." Sample Decl. ¶ 2. Sample states in his declaration that he "was intimately involved in the design and development of debugging, node observability and node tracing technology implemented in Quickturn's emulation systems. [His] involvement took place during the entire development of these features." *Id.* Sample is currently the vice-president of engineering of a company located in Cupertino, California. He resides in Saratoga, California. He states that "it would be extremely inconvenient to attend trial in Delaware" and that it is "unlikely that my current employer would permit me to attend trial" in Delaware. *Id.* ¶¶ 3–4.

Wei–Jin Dai was an engineering manager at Quickturn from 1990 through 1996. Dai. Decl. ¶ 1. She was responsible for designing the debugging technology used in the accused Mercury systems. *Id.* ¶ 2. She is presently the vice-president of research and development for a company located in Santa Clara, California. She resides in Cupertino, California. She

---

7. For example, because both parties are represented by California counsel, the added expense of local Delaware counsel would be avoided if this case is transferred. Further, travel expenses would undoubtedly be reduced if this case is transferred. Finally, Quickturn notes that the equipment at issue in this case is both large and complicated. It would therefore be both inconvenient and costly to transport the equipment to Delaware, along with the employees needed to assemble and operate the equipment, in the event a courtroom demonstration is necessary at trial.

states that it would be "very inconvenient" and "extremely disruptive of [her] current work schedule" to attend trial in Delaware. She adds that she believes that her employer would not want her to travel to Delaware to testify at trial. *Id.* ¶¶ 3–4.

Mark Heising was a Quickturn engineer on the team responsible for developing the debugging technology used in the accused Mercury systems. Heising Decl. ¶ 2. He is currently the president, sole shareholder, and only employee of a company located in Palo Alto, California. He also resides in Palo Alto. He states that "at best," it would be "extremely inconvenient" to attend trial in Delaware. He adds that, because he is self-employed, any time away from Northern California adversely affects his business. *Id.* ¶¶ 3–4.

The importance of these three non-party witnesses is confirmed in declarations filed by Raymond Ostby, Quickturn's vice president and chief financial officer, and by James Brooks, one of the attorneys representing Quickturn in this action. *See* Ostby Decl. ¶ 7, Brooks 2nd Decl. ¶ 9. Although none of the three has stated outright that they will not testify in Delaware, their declarations confirm that, at best, doing so would be extremely disruptive to themselves and their employers. Their presence within the subpoena power of the district court for the Northern District of California is a factor that strongly favors transfer.

### 2. Quickturn Suppliers and Competitors

Quickturn also identifies six companies—one supplier and five competitors—that may be called to testify in this litigation. *See* Reply Br. at 13–14; Ostby Decl. ¶ 8; LaPorte Decl. ¶¶ 15–21. Xilinx, Inc. manufactures certain "field programmable gate arrays" that provide "logic functionality" in the accused Mercury systems. Testimony from Xilinx employees is expected to be necessary for Quickturn's invalidity and non-infringement defenses. Testimony from the five competitors is expected to be necessary on the issue of damages.

These six companies are all located within the subpoena power of the Northern District of California. Reply Br. at 13. It is not clear whether any of these six companies might also be within the subpoena power of this court. Lawrence LaPorte, an attorney for Quickturn, has declared that none of the five competitors are "located" in Delaware. LaPorte Decl. ¶ 16. LaPorte supports his declaration by attaching web pages from the five competitors, none of which identify a Delaware location. Although Quickturn has not stated that officers or employees of these companies would refuse to testify in Delaware, it appears that their presence here cannot be guaranteed. Amenability to compulsory process may, therefore, be important, especially with respect to the competitor companies.

### 3. Mentor's Key Witnesses—The Inventors

Mentor's opposition to transfer rests heavily on the three inventors of the Barbier patents, each of whom resides in France. Quickturn does not dispute the importance of testimony from these three witnesses. But Mentor has failed to support its assertion that these witnesses make Delaware a more appropriate forum than Northern California.

Mentor notes that none of the three inventors—Messrs. LePape, Barbier, and Reblewski—are employees of Mentor. This, however, is somewhat misleading. These men were all employees of Meta, Mentor's wholly owned subsidiary, at the time the Barbier patent applications were filed. According to Mentor, Reblewski is still "affiliated" with Meta, but works only part time. Freed Decl. ¶ 15. According to Quickturn, however, Reblewski's "affiliation" with Meta is as its president. Reply Br. at 16; Brooks 2nd Decl. ¶ 8. While LePape and Barbier are no longer Meta employees, they still do consulting work for Meta. Freed Decl. ¶ 15. Thus while Mentor may not be able to compel these three men to testify at trial, each of the

inventors does appear to have an incentive to do so. In fact, they may even be contractually obligated to do so.[8]

Regardless of whether Mentor can compel or convince the inventors to testify at trial, this court has no more subpoena power over these men than would a Northern California district court. Further, Mentor has made absolutely no showing that the inventors are more willing to testify in Delaware than in California. Mentor has provided no statements from the inventors themselves. Nor have they provided declarations to that effect from anyone else. Indeed, there is nothing in the record to suggest that anyone has ever asked these men which forum—Delaware or Northern California—would be preferable to them. Mentor simply states in its brief: "Clearly these critical witnesses are more likely to accept a trip to Delaware covering six time zones than a trip to California covering nine." Whether these gentlemen would prefer to testify in Northern California or Delaware is not such a "clear" proposition to be worthy of substantial weight.[9] Finally, Mentor concedes that these gentlemen have been cooperative in testifying in previous patent litigation involving Mentor and Meta.

The court concludes that the convenience and availability of witnesses is an important factor that weighs strongly in favor of transferring this case to the Northern District of California.

### C. Judicial Economy

■ Quickturn points to two reasons why transfer to Northern California would promote judicial economy. First, Quickturn claims that transfer would obviate a substantial dispute as to whether this court can exercise personal jurisdiction over Meta. Quickturn asserts that Meta maintains rights and obligations to the Barbier patents and should, therefore, be a party to this action. As previously noted, Quickturn named Meta as a counterclaim defendant. Meta moved to dismiss the counterclaim on two grounds, one of which was lack of personal jurisdiction. Quickturn then voluntarily dismissed Meta without prejudice, purportedly to avoid unnecessarily litigating the issue of personal jurisdiction. Mentor does not appear to dispute that Meta is subject to personal jurisdiction in Northern California. Thus, both judicial economy and the interests of justice would be served by transferring this case to the Northern District of California.[10] *See Multistate Legal Studies, Inc. v. Marino*, 41 U.S.P.Q.2d 1886, 1895–96, 1996 WL 786124 (C.D.Cal.1996); WRIGHT & MILLER § 3854, at 442–49 (noting that cases have frequently been transferred when it would facilitate bringing in

---

8. The contract by which the inventors assigned their rights to the Barbier patents to Mentor appears to obligate them to assist Mentor in defending the patents. The relevant provision in the contract states:

> Assignors agree to execute, acknowledge and deliver to [Meta] or Mentor Graphics any specific assignments or other relevant documents *and take any such further action* as may be considered necessary by [Meta] or Mentor Graphics to obtain or defend letters patent in any and all countries and to vest title in such intellectual property in [Meta] or its assigns or to obtain for [Meta] or its assigns any other legal protection for such intellectual property.

Brooks 2nd Decl. at Ex. 3 (emphasis added), Quickturn may be correct in asserting that this provision obligates the inventors to testify in either Delaware or California.

9. For example, they may find it desirable to be near Mentor's regional headquarters located in San Jose. Flight schedules provided by Quickturn indicate a difference in travel time of less than three hours—11 hours and 20 minutes from Paris to San Francisco; 8 hours and 30 minutes from Paris to Philadelphia, the nearest international airport to this courthouse.

10. Meta's motion to dismiss was withdrawn upon Quickturn's voluntary dismissal of Meta. Accordingly, the court expresses no opinion on the merits of Meta's asserted grounds for dismissal. Thus, it may be that Meta's "substantive" ground for dismissal—i.e., that it has no right to defend or enforce the Barbier patents—might ultimately prove successful after this case is transferred. Judicial economy would still be served by obviating the preliminary question over personal jurisdiction.

a third-party defendant not subject to process in the original forum).

Second, Quickturn contends that transferring this case would promote judicial economy by enabling this action to be consolidated with the Aptix action and/or the "mirror image" action identified above. With respect to the Aptix action, the potential for efficiencies appears to have been substantially reduced with Judge Alsup's ruling that the mirror image action is not "related" to the Aptix action. Because the mirror image action involves the same issues as the instant action, it seems unlikely that this action would be assigned to Judge Alsup if transferred. Still, there is some overlap in the parties, technologies, and accused products in this case and the Aptix action. As such, there may be some efficiencies gained by litigating both actions in the same District. Because the court finds that transfer is warranted even without regard to the Aptix action, the extent of such potential efficiencies need not be explored.[11]

■ The court gives no weight whatsoever to any efficiencies that might be achieved by consolidating this case with the mirror image action pending in the Northern District of California. A patent infringement defendant should not be able to strengthen its case for transfer by the simple expedient of filing a declaratory judgment action in the forum of its choice.

### D. The Interests of Justice

■ Although couched in terms of convenience to parties and witnesses, Mentor's opposition to transfer is in reality rooted in "fairness." The Northern District of California is clearly more convenient to Quickturn than it is to Mentor. Apparently to avoid any "home court advantage" that Quickturn may enjoy in that district, Mentor looked for a neutral forum—Delaware. *See* Opp'n Br. at 8–9 ("Fairness of Delaware as a Forum"). In essence, Mentor contends that it is more "fair" to inconvenience both of the parties

and all of the west coast witnesses, by requiring them to travel nearly 3,000 miles to Delaware, than it is to inconvenience only Mentor's French witnesses. The court finds this argument unpersuasive.

First, as noted above, there is no support in the record for Mentor's assertion that the French witnesses would prefer to testify in Delaware than in Northern California. Second, the court has found that Northern California is a more convenient forum than Delaware for both Quickturn and Mentor. Mentor has provided the court with no authority suggesting that a transfer that would otherwise be warranted should not be granted because the transferee forum is more convenient to the defendant than it is to the plaintiff. Third, the interests of justice are not well served by forgoing the benefits of the subpoena power the Northern District of California courts can exercise over a number of important witnesses in this case. Finally, transferring the case would serve the interests of justice by obviating a substantial question as to the court's exercise of personal jurisdiction over Meta.

On balance, the court finds that the interests of justice weigh in favor of transfer.

### E. Relative Congestion of the Dockets

■ Finally, Mentor asserts that this case will proceed more quickly in the District of Delaware because of its supposedly lighter and faster moving docket. In support of its claim, Mentor cites 1998 statistics published by the Administrative Office of the United States Courts. Those statistics apparently show that the average number of cases pending per judgeship was 379 in Northern California versus 225 in Delaware. Further, for civil cases in which trials were completed during the year ended September 30, 1998, the median number of months from filing to trial was apparently 28 in Northern California versus 19 in Delaware.

---

11. For the same reason, the court need not consider Quickturn's assertion that these

cases may still be consolidated despite Judge Alsup's ruling.

The relative congestion of the dockets is a legitimate factor to be weighed in a venue transfer analysis. *See Affymetrix,* 28 F.Supp.2d at 206. While the statistics presented by Mentor thus weigh against transfer, they do so only slightly, Statistics such as those presented here may vary from year to year and can be affected by a variety of factors. Indeed, the comparable statistics from 1997 apparently yielded almost no difference between these two fora. *See id.* (noting median time from filing to trial of 20 months in Northern California versus 18 months in Delaware). Whether the apparent change from 1997 to 1998 reflects an aberration or a trend remains to be seen.

## IV. CONCLUSION

After weighing the factors discussed above, the court finds that Quickturn has met its heavy burden of establishing that the "balance of convenience" tips strongly in favor of transfer. For this reason, IT IS HEREBY ORDERED that Quickturn's motion to transfer this case to the United States District Court for the Northern District of California is GRANTED.