ADE CORPORATION, Plaintiff,

v.

KLA–TENCOR CORPORATION,
Defendant.

No. CIV. A. 00–892–RRM.

United States District Court,
D. Delaware.

April 10, 2001.

---

William J. Marsden, J. Andrew Huff, Fish & Richardson, P.C., Wilmington, DE, and Robert E. Hillman, Craig R. Smith, Fish & Richardson, P.C., Boston, MA, for Plaintiff, ADE Corporation.

Rudolf E. Hutz, Patricia Smink Rogowski, Connolly, Bove, Lodge & Hutz LLP, Wilmington, DE, Michael H. Kalkstein, Chris Scott Graham, Oppenheimer Wolff & Donnelly LLP, Palo Alto, CA, for Defendant KLA–Tencor Corporation.

## OPINION

McKELVIE, District Judge.

This is a patent case. In a complaint filed on October 27, 2000, ADE Corporation alleges KLA–Tencor Corporation is infringing its patent. KLA has answered the complaint and counterclaimed, alleging ADE is infringing three of its patents. The case is currently scheduled for a two week jury trial beginning on Monday, March 4, 2002.

KLA has moved to transfer the case to the Northern District of California pursuant to 28 U.S.C. § 1404(a), which provides that for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The parties have completed briefing on the motion and presented oral argument on March 21, 2001. This is the court's decision on the motion.

### I. FACTUAL BACKGROUND

The court draws the following facts from the pleadings and from the affidavits and documents the parties have filed in support of and in opposition to the motion.

ADE and KLA are semiconductor equipment manufacturers. ADE is a Massachusetts corporation with its principal place of business in Westwood, Massachu-

setts. KLA is a Delaware corporation with its principal place of business in San Jose, California.

ADE and KLA's shares are traded on the NASDAQ. ADE has approximately 600 employees worldwide and facilities in Arizona, California, New Jersey, North Carolina, Texas, Vermont, and Washington. KLA has approximately 5,200 employees worldwide and facilities in Arizona, California, Colorado, Florida, Idaho, Massachusetts, New Hampshire, New Mexico, New York, Oregon, Texas and Vermont. KLA is one of the Standard & Poor's 500 and has annual revenues in excess of $1 billion.

In its complaint, ADE alleges KLA is infringing its United States Patent No. 6,118,525 (the '525 patent), which relates to an inspection system for distinguishing pits and particles on the surface of a workpiece, such as a silicon wafer. In its counterclaim, KLA alleges ADE is infringing its United States Patent Nos. 5,226,118 (the '118 patent), which relates to a data analysis system and method for industrial process control systems, 6,081,325 (the '325 patent), which relates to an optical scanning system for surface inspection, and 5,883,710 (the '710 patent), which relates to a scanning system for inspecting anomalies on surfaces.

In its papers, KLA identifies a number of facts that it argues suggest it would be in the interests of justice to transfer this case so that it can be tried in the Northern District of California. For example, KLA expects the machine it has designated SP1 and its family of Surfscan products will be the subject of ADE's infringement claims. KLA manufactures the SP1 at its facility in Milpitas, California. In addition, the invention disclosed in KLA's '325 patent is used in its AIT machine, which KLA also manufactures in Milpitas. The SP1 and AIT are large machines. The SP1 is ap-

proximately six feet high and weights about 1,000 pounds. The AIT is about twelve feet long and weighs approximately 2000 pounds. The instrumentation in both machines is very delicate. KLA suggests it would be difficult if not impossible to transport the equipment to Delaware in the event a demonstration is necessary.

KLA also identifies a number of potential witnesses who reside in California and may not be available to testify at a trial in Delaware. For example, the three named inventors on KLA's '325 patent work for KLA in Milpitas. While none of the four named inventors on KLA's '118 patent work for KLA, three of them live in California. The two named inventors on KLA's '710 patent work for KLA and live in California. In addition, KLA notes that two of the parties' competitors, Applied Materials and Electroglas, are located in the Northern District of California.

With regard to the three named inventors on ADE's '525 patent, two work for ADE in Massachusetts. A third no longer works for ADE and may be living in South Carolina.

## II. *DISCUSSION*

█ As previously noted, a court may transfer an action pursuant to 28 U.S.C. § 1404(a) if two conditions are met: 1) the plaintiff could have brought the case initially in the proposed transferee forum; and 2) the transfer would promote the convenience of the parties and witnesses and would be in the interests of justice. *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 878–880 (3d Cir.1995); *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24–25 (3d Cir.1970), *cert denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). The defendant has the burden of proof to demonstrate that these factors militate in favor of a transfer. *See Shutte,* 431 F.2d at 25. Unless the balance is strongly in favor of a

transfer, the plaintiff's choice of forum should prevail. *See id.; see also Norwood v. Kirkpatrick,* 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

The parties do not dispute that plaintiff could have brought this action in the Northern District of California. They do dispute whether the balance of conveniences and interests of justice strongly favor a transfer.

As the court of appeals noted in *Jumara,* there is no definitive formula or list of factors to which a court must look in considering a motion for change of venue. In a case such as this, a commercial dispute between two corporations, courts have considered the location of each party's principal place of business; the size and financial strength of the companies; and the expected costs of trying the case in each jurisdiction, including travel costs and the burden imposed on a party in having its employees out of the office and at the trial. Courts have also considered whether the location of the forum will make it more difficult for a defendant to put on its case by, for example, making it burdensome or expensive to produce documents or by forcing it to offer into evidence a deposition transcript or video testimony of an important witness, rather than being able to call that person to testify at the trial. Other factors courts have considered include the relative congestion of the courts' dockets, whether there are related cases pending in either court, and, in diversity cases, whether a judge is familiar with the applicable state law.

In this case, KLA and ADE have identified a number of factors the court should consider in deciding whether to grant the motion. KLA has pressed three as tipping the balance strongly in favor of transferring this case to the Northern District of California. First, KLA argues that the Northern District is the only court that has subpoena power over several critical witnesses and, consequently, if the court denies the motion, KLA will be denied the opportunity to have these witnesses testify in person at the trial. Second, KLA's manufacturing facility, documents and personnel are located in the Northern District. If the court denies the motion, it will be expensive for KLA to fly its employees to Delaware and lodge them in a hotel during the trial. A trial in Delaware will also disrupt KLA's business, as it will mean its employees will be away from work for more time than if the case were tried in California. Third, if the case is tried in Delaware, KLA will be unable to bring the machines in issue to Delaware and would, therefore, be precluded from showing them to the jury. In making these arguments, KLA notes that if the court grants its motion, it will save the cost of having to pay local Delaware counsel. It also argues that the relative inconvenience to ADE will not be so great, as ADE is based in Massachusetts, and its witnesses will have to travel to attend a trial in any event.

### A. Are there Critical Witnesses Who Will Be Available to Testify at a Trial in California and Who Will Not Be Available to Testify at a Trial in Delaware?

KLA has identified five witnesses that it expects will be critical to the presentation of its case who work in the Northern District of California and who are not subject to this court's subpoena power, two employees of KLA's competitors Applied Materials and Electroglas and three of the four inventors on KLA's '118 patent.

### 1. Competitors' Employees

KLA reports that employees of Applied Materials and Electroglas will be critical

witnesses at the trial in this case, offering testimony on the issues of invalidity, non-infringement and damages. Applied Materials and Electroglas are based in the Northern District of California. KLA expects it can rely on Federal Rule of Civil Procedure 45(b)(2)[1] to compel those employees to appear and testify at the trial in California. It will not, however, be able to compel them to appear and testify if the case is tried in Delaware, as they do not live or reside in the District, or within 100 miles of the court. KLA argues that if the court does not grant the motion to transfer, there is no assurance these witnesses will voluntarily appear in Delaware to testify at the trial and it would be forced to rely on presenting their testimony to the jury by a video tape or written transcript.

KLA relies on two decisions of this court, *Mentor Graphics Corp. v. Quickturn Design Systems, Inc.*, 77 F.Supp.2d 505 (D.Del.1999) and *Affymetrix, Inc. v. Synteni, Inc.*, 28 F.Supp.2d 192 (D.Del. 1998), for the proposition that the convenience of these witnesses should represent the primary consideration in a motion to transfer. *Mentor Graphics* and *Affymetrix* did not establish the principle that the convenience of witnesses is the primary consideration in the balancing of factors. Rather, the court noted it is "often an important factor" and cited Wright and Miller, *Federal Practice and Procedure*, for the proposition that it is a "most fre-

quently mentioned factor." *Mentor Graphics Corp.*, 77 F.Supp.2d at 510; see also *Affymetrix, Inc.*, 28 F.Supp.2d at 203 (noting that "[f]act witnesses who possess first-hand knowledge of the events giving rise to the lawsuit, however, have traditionally weighed quite heavily in the 'balance of convenience' analysis").

■ It would be more precise to report that in reviewing a motion to transfer, courts frequently look to the availability of witnesses as an important factor, as it can be relevant to protecting a defendant's opportunity to put on its case with witnesses who will appear in person at the trial. For example, in *Mentor Graphics*, the court noted the defendant expected the testimony from five competitors would be necessary on the issue of damages, and found the convenience and availability of these witnesses was an important factor that weighed strongly in favor of transferring the case to the Northern District of California. *See Mentor Graphics Corp.*, 77 F.Supp.2d at 511.

In this case, KLA has not demonstrated that we can expect the employees from Applied Materials and Electroglas will be critical witnesses at trial. In fact, it would be an unusual patent infringement case where issues of liability, validity and damages turned on the testimony of a competitor. The court pressed counsel on this issue during oral argument to get a sense

---

1. Federal Rule of Civil Procedure 45(b)(2) states:

 Subject to the provisions of clause (ii) of subparagraph (c)(3)(A) of this rule, a subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general juris-

diction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena. When a statute of the United States provides therefor, the court upon proper application and cause shown may authorize the service of a subpoena at any other place. A subpoena directed to a witness in a foreign country who is a national or resident of the United States shall issue under the circumstances and in the manner and be served as provided in Title 28 U.S.C. § 1783.

of the witnesses' likely testimony and why that testimony would be critical. Counsel suggested this testimony would be relevant to obviousness and commercial success, but when the court pressed counsel, he conceded he has never called a competitor to testify at a patent infringement trial.

At this stage of the proceedings, the court is not convinced these proposed witnesses from the parties' competitors will be critical witnesses at the trial.

### 2. The Inventors on KLA's '118 Patent

KLA reports that three of the inventors on its '118 patent, Michael Baker, Leslie Lane and David Perloff, are not employed by KLA, but are California residents and are employed in the Northern District of California. (It is unclear where the fourth listed inventor, Alexander Freedland, lives and works.) KLA argues these witnesses will be critical to the presentation of its case and that it can not be assured they will agree to appear to testify in person in Delaware.

> In support of this argument, KLA notes: In granting the defendants' motion to transfer, the *Affymetrix* court disregarded the fact that four out of five critical fact witnesses had already voluntarily agreed to testify in Delaware. Instead, the court found the subpoena power of the Northern District of California to be the determinative factor which mandated a transfer of the case, stating that 'even previously cooperative witnesses may become reluctant participants where a trial in a distant state such as Delaware promises the incurrence of substantial, prolonged litigation.' *Affymetrix*, 28 F.Supp.2d at 205.

For three reasons the court is not inclined to give these facts much weight in determining whether to grant the motion. First, it does not appear the testimony of these witnesses will be necessary to resolve the matters put in issue by ADE's complaint. These witnesses and their testimony have only become significant in this case because KLA put the '118 patent in issue through its counterclaim. It is not clear from the record why KLA has joined this patent in this action and whether in fact the issues raised in that counterclaim are necessary for a resolution of the dispute identified in the plaintiff's complaint. If they are not, then the defendant should not be able to undermine a plaintiff's choice of a forum by voluntarily joining claims and then contending they can not fairly be resolved here.

Second, defendant has not established what testimony these witnesses will offer at trial that will be critical to the defendant's case, or even whether defendant will need to call one, two, three or all four of the inventors at the trial. Without that showing, the court is reluctant to find at this stage of the proceeding their testimony will, in fact, be critical.

Third, the court has some question whether it is correct that we should discount a witness's willingness to voluntarily appear and testify at trial in Delaware. Previous decisions in this court have suggested that the better approach is to recognize that witnesses have and will appear here without having to be subpoenaed. *See, e.g., Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 821 F.Supp. 962, 967 (D.Del.1993) (assuming that because a witness is a former employee of defendant he would be willing to testify absent a subpoena); *see also Tse v. Ventana Medical Systems, Inc.,* Civ. A. No. 97–37–SLR, 1997 WL 811566, *7 (D.Del. Nov. 25, 1997). Rather than starting with a presumption that witnesses may not appear and concluding the case should be transferred based on that assumption, it may make more sense to look at the facts and circumstances of each witness to see

whether a subpoena is necessary. Certainly, where a witness reports that he or she is willing to appear and testify, it does not make much sense to assume he or she will not appear here and that the case should therefore be transferred. *But see Sherwood Medical Co. v. IVAC Medical Systems, Inc.*, Civ. A. No. 96–305 MMS, 1996 WL 700261 at *5 (D.Del. Nov.25, 1996) (finding plaintiff's assurances that two of the three named inventors would appear at trial is not the same as having them amenable to the subpoena power of the trial court). *See generally New Castle County Del. v. National Union Fire Ins. Co.*, No. 00–5157, 2001 WL 276694, at *10 (3d Cir. March 21, 2001) (admonishing that while there is a time and place for courts to rely on principles in resolving disputes, it should not be at the expense of common sense).

In this case, for example, the court expects that the inventors on defendant's patent would have some incentive to cooperate with their assignee, even if that means having to travel to Delaware to testify in support of an infringement claim or in opposition to a claim the patent is invalid or unenforceable. At the oral argument on the motion, the court pressed counsel on whether this is a practical and legitimate concern or an artificial argument that will be made anytime any witness does not reside in this District. In response to the court's questions, defendant's counsel reported he had never had a trial in a patent case were he was unable to get an inventor to appear and testify voluntarily.

At this stage of the proceeding, the court is not inclined to give this argument as to these witnesses much weight, as it is not clear what testimony the defendant will need from the witnesses and whether those witnesses will in fact not be available to testify at trial in this court.

**B.** *On Balance Will It Be More Convenient to the Parties to Try the Case in California?*

█ KLA argues that it will be much more convenient for it to try this case in California. Its manufacturing facilities, documents and employees, including the inventors on the '325 and '710 patents, are all in California. KLA argues that the relative burden to ADE in trying this case in California is no greater than trying it in Delaware, as ADE is based in Massachusetts and its officers and employees will have to travel to trial whether it is in Delaware or California, and as California may in some senses be more convenient for ADE as it has offices in the Northern District. KLA also argues that should the court grant the motion, it would be relieved of the burden of having to retain local counsel in Delaware.

**1.** *Inconvenience and expense to KLA of litigating in Delaware*

These facts as identified by KLA do suggest that it will be relatively more burdensome for it to try this case in Delaware. It is, however, difficult to evaluate the nature and extent of that burden. For example, if we look at the issue of documents, where they are stored and how they are produced, there is probably little if any incremental burden on KLA in trying this case in Delaware, rather than in California. With new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles. *See Matsushita Battery Industrial Co., Ltd. v. Energy Conversion Devices, Inc.*, Civ. A. No. 96–101–SLR, 1996 WL 328594 (D. Del., Apr 23, 1996); *Wesley–Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215 (D.Del.1993); *see also*

*Critikon, Inc.*, 821 F.Supp. at 966–67 (finding that regardless of where trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial).

If we look at out-of-pocket expenses, we can make some judgments as to the relative burdens of litigating in these forums. For example, KLA will save on transportation and hotel expenses if the case is tried in California. But other judgments, such as whether the overall cost of bringing this case to trial and to a verdict would be more if the case is heard in Delaware rather than California, may be much more difficult. While judges may not be in the best position to opine on these matters, in patent infringement cases, the relative cost of litigation in one jurisdiction versus others probably depends on a number of factors, including whether the court has implemented what we call a "rocket docket;" whether it has special local rules for patent infringement cases; whether the court has an established procedure for exploring settlement; and whether the court has a relatively well developed and predictable body of case law on how the cases are tried, including case law on matters such as bifurcation, scope of the waiver of the attorney client privilege on the assertion of a good faith reliance on the advice of counsel, and even on when it is appropriate to transfer a case to another venue. A chief financial officer or general counsel of a company involved in a number of patent infringement cases would probably tell us that while transportation and hotel expenses can be substantial, they are not a significant factor in the overall expense of litigating a case. I expect that they would tell us that in these cases, there is a direct correlation between how many months it takes to get the case to trial and the overall expense of the litigation, without regard to whether the case is tried on a company's home turf or three thousand miles away.

In a case like this, and without more specific information from the parties, the court is not inclined to find that the costs of trying this case in Delaware, including the cost of retaining local counsel, should be a significant factor in deciding whether to grant the motion.

### 2. *KLA's status as a Delaware corporation*

Another burden that may be imposed on KLA in litigating in this forum is the additional or incremental time certain of its management can expect to be away from their office in traveling to and attending trial here. In certain cases where, for example, the defendant is a smaller company with a few key executives, this could be a unique and substantial burden that warrants a change of venue. *See Wesley–Jessen*, 157 F.R.D. at 218. In this case, given KLA's size and status as an enterprise engaged in business throughout the United States, it does not appear this will be a significant burden.

In addition, as the judges of this court have noted, one aspect of a company's decision to incorporate in Delaware is that under our jurisdictional and venue statutes it is agreeing to submit itself to the jurisdiction of the courts in this state for the purposes of resolving this type of commercial dispute. *See, e.g., Critikon, Inc.*, 821 F.Supp. at 965 (finding that in choosing Delaware as its legal home, a company can not complain that another party has decided to sue it in Delaware); *see also Tse*, 1997 WL 811566 at *1.

KLA argues that its status as a Delaware corporation is not a relevant factor to be weighed in considering the motion and that *Critikon* may no longer be good law. [S]ubsequent cases have rendered this factor inconsequential for at least two

reasons. First, the *Mentor Graphics* court specifically held that a defendant's state of incorporation is "not dispositive" in the adjudication of a motion to transfer. *Mentor Graphics,* 77 F.Supp.2d at 509, fn. 6. Even putting aside the language from *Mentor Graphics,* there can be no doubt that KLA–Tencor's state of incorporation is not dispositive, because the Court has granted motions to transfer brought by defendants who were incorporated in Delaware. *Mentor Graphics,* 77 F.Supp.2d at 514; *Affymetrix,* 28 F.Supp.2d at 209.

KLA is correct that its status as a Delaware corporation is not dispositive of the issues raised by the motion, but it has overstated the significance of the decisions in *Mentor Graphics* and *Affymetrix.* A defendant's status as a Delaware corporation is a relevant factor to be considered in determining whether to grant a motion for a change of venue and has been since Congress adopted the change of venue statute in 1948. *See, e.g., Brown v. Insurograph, Inc.,* 85 F.Supp. 328, 330, 82 U.S.P.Q. 255 (D.Del.1949). Consequently, absent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient. *See Wesley–Jessen,* 157 F.R.D. at 218.

There are other practical reasons why a defendant's status as a Delaware corporation is relevant to balancing the interests of the parties in litigating in one forum or another. For example, one of the issues a plaintiff faces before filing an action is jurisdiction, where can it sue and obtain jurisdiction over a defendant. More specifically, where can a plaintiff sue a defendant and obtain jurisdiction without a time consuming, expensive and relatively unproductive dispute over personal jurisdiction. Under our venue laws, a plaintiff in a patent infringement case can obtain jurisdiction over a defendant where it resides;

that is, in its state of incorporation, or its principal place of business, or where the plaintiff can demonstrate the defendant has established a legal presence pursuant to a state's jurisdictional statutes, such as a long arm statute, and notions of due process. In this case, one option ADE had was to sue KLA on its home turf, in the Northern District of California. Another was to sue here. The third option was to sue KLA where ADE could establish KLA is amenable to process, perhaps in Massachusetts, or Virginia, or Texas, or Illinois. *See LSI Indus. Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1371 (Fed.Cir.2000). In selecting Delaware, ADE was expressing its preference to litigate here, rather than on KLA's home turf in California. At the same time, it was expressing a preference to avoid what might be expensive and unproductive motion practice in some other jurisdiction. Furthermore, to the extent we have a relatively clearly defined body of case law on when this court will conclude a matter should be transferred, by filing here, ADE was also expecting it would avoid the unnecessary and unproductive expense of a battle over a change of venue.

In light of these facts, including that KLA is incorporated in Delaware, the court does not find the convenience of the parties weighs in favor of a change of venue.

### C. *Would a Change of Venue be in the Interests of Justice?*

■ KLA has pressed one argument on why it would be in the interests of justice to transfer this case to California: if the case is not transferred, because of the size and sensitivity of the SP1 and the AIT, it will not be able to bring them to Delaware. It will, therefore, be deprived of an opportunity to show them to the jury, either in the courtroom or on a visit to KLA's facili-

ty. The court does have an interest in seeing that a plaintiff's choice of a forum does not deprive a defendant of its ability to put on a defense that effectively communicates the matters in issue to the judge and the jury.

Demonstrative evidence can be both interesting and instructive in a patent infringement case, whether it illustrates or demonstrates the coin box in a vending machine, a liposome, macroreticular copolymer beads, a process for crystallizing dextrose, a method for manufacturing tinted contact lenses, a sandwiched wall board, dual terminal batteries, a universal remote control for electronic appliances, monoclonal antibodies, picture in picture television graphics, a drug-in-adhesive transdermal patch, long fiber reinforced thermoplastics, wet processing systems for cleaning silicon wafers, the fan blade of an airplane engine, sun protection cream, a surgical mesh plug, a carbon filter, roofing tape, a graphics controller, or a rapidly exchangeable coronary catheter.

In some cases, parties have brought large and heavy demonstratives into the court. For example, in one relatively recent case, a party brought an airplane engine to the trial. Typically, however, when the technology in a case is incorporated in a large or heavy machine, such as a furnace, one party or the other will develop an alternative mechanism to show and demonstrate the technology to the jury, such as a model, or a videotape or animation. In this case, it appears the machines are too large and sensitive to transport to a courthouse, whether in Delaware or California. That suggests KLA is considering asking the court to take the jury to its facility to see these machines. This would be an unusual request, and it is not clear to the court a visit to the site would be necessary or appropriate. For these reasons, and at this stage of the proceed-

ings, the court is not inclined to give this factor any weight in considering whether to grant the motion.

### III CONCLUSION

In conclusion, the court finds that defendant has failed to identify facts that suggest the balance of convenience for the parties and witnesses or the interests of justice would be served in transferring this matter to California and the court will, therefore, enter an order denying the motion.